NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PETER C. THURMAN,**
*Petitioner,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent.*

---

2014-3045

---

Petition for review of the Merit Systems Protection Board in No. SF-3443-12-0727-I-1.

---

Decided: June 9, 2014

---

PETER C. THURMAN, of Bremerton, Washington, pro se.

SARA B. REARDEN, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With her on the brief was BRYAN G. POLISUK, General Counsel.

---

Before TARANTO, BRYSON, and HUGHES, *Circuit Judges.*

PER CURIAM.

Peter Thurman appeals from a final decision of the Merit Systems Protection Board that dismissed as untimely his claim that the Department of the Navy improperly suspended him. Because we find no legal error or other abuse of discretion, we affirm.

BACKGROUND

Mr. Thurman worked for the Navy for almost thirty years, most recently as a Mechanical Engineer at the Naval Facilities Engineering Command in Bremerton, Washington. To serve in that position, which is designated "non-critical, sensitive," Mr. Thurman had to obtain and maintain a security clearance.

On April 30, 2012, Mr. Thurman was arrested and charged with simple assault and possession of a loaded weapon. On May 8th, the agency, based on the arrest, issued a Proposed Suspension of Access to Classified Information. That same day, Mr. Thurman attended a meeting about the proposed suspension. On May 14th, the agency suspended his access to classified information pending a final decision about whether to revoke his security clearance, a decision to be made by the Department of Navy Central Adjudication Facility (DON CAF).

On May 16, 2012, the agency sent Mr. Thurman a Notification of Proposed Indefinite Suspension (from employment), which stated: "On 14 May 2012, your eligibility for access to classified information and areas was suspended. Accordingly, you are unable to satisfy a requirement of your position." Resp. App. 39.

On May 21st, Mr. Thurman emailed Lieutenant Commander Haverly, the official identified in the May 16th Notification as deciding whether to suspend Mr. Thurman from his job. Mr. Thurman asked to see the material that the agency relied on when proposing to suspend him indefinitely, including the police report from

his April 30th arrest.  Lt. Cdr. Haverly responded to Mr. Thurman's his email, stating that a Human Resources Specialist would get back to him.  Mr. Jamrog, the Human Resources Specialist, then contacted Mr. Thurman, initiating a series of emails between the two.  On May 23rd, Mr. Thurman twice emailed Mr. Jamrog, asking seven detailed questions about the May 16th Notification and thanking Mr. Jamrog for attempting to answer all seven questions.

On June 20, 2012, the agency decided to indefinitely suspend Mr. Thurman starting June 22nd.  In a letter notifying Mr. Thurman of the indefinite suspension, Lt. Cdr. Haverly stated that if DON CAF decides to revoke his security clearance, the Navy will propose to remove him from employment, whereas the Navy will return him to duty status if DON CAF does not revoke the security clearance.  In the interim, Lt. Cdr. Haverly said, Mr. Thurman "will be carried on the rolls in a non-duty, non-pay status."  Resp. App. 40.  Mr. Thurman acknowledges that he received Lt. Cdr. Haverly's letter by June 23rd.

On August 17, 2012, Mr. Thurman appealed his indefinite suspension to the Board.  In the Form 185-2, he made no mention of discrimination in his brief explanation of the reasons he thought that the Navy was wrong in its suspension decision.  Instead, he referred to his obedience to law, his strong record as an employee, and the Navy's intent to dismiss the charge of assault that prompted the April 30th arrest.

The Board soon thereafter issued an order informing Mr. Thurman that his appeal appeared untimely and giving him opportunity to demonstrate that he either filed his appeal on time or had good cause for the delay.  In response, Mr. Thurman stated that his "mental state" provided good cause for the untimely filing—specifically, that his "life collapsed on the morning of April 30th, 2012," when he was arrested, an event he was "unable to

cope with." Resp. App. 50. Because he "felt [he] was going mad," Mr. Thurman requested and received "mental help," after which he "regained [his] senses." *Id.*

On September 18, 2012, an administrative judge, who was acting for the Board, issued an initial decision dismissing Mr. Thurman's appeal as untimely. *Thurman v. Dep't of Navy*, No. SF-3443-12-0727-I-1 (M.S.P.B. Sept. 18, 2012). The administrative judge found that Mr. Thurman had to appeal by July 23, 2012, but instead filed on August 17th, twenty-five days late. The administrative judge also found that Mr. Thurman's mental state did not constitute good cause for the untimely filing.

Two days later, on September 20th, Mr. Thurman petitioned for review of the initial decision. The form for the petition asks for the reasons the petitioner thinks the initial decision is wrong. In response, Mr. Thurman gave reasons having to do with timeliness, then went on to say that he "now believe[s] the Navy's determination to terminate [his] employment[] is retaliation for" an earlier race-discrimination complaint he had filed. Resp. App. 30. The "determination to terminate" phrase might refer to the June 20th suspension. Alternatively, it might refer to the separate action by the Navy to place Mr. Thurman on a performance improvement plan—which, in fact, led to his proposed removal in February 2013 and his removal thereafter.[1]

---

[1] Three days after the administrative judge's September 18, 2012 dismissal of the MSPB challenge for untimeliness, Mr. Thurman evidently filed a complaint with the Navy alleging that his June 2012 suspension was in reprisal for an unrelated earlier EEOC complaint and that the April 2012 arrest was the result of discrimination. When the Navy dismissed the complaint because it was untimely and because he had already elected the

On September 16, 2013, the Board issued a final order in the suspension case, affirming the dismissal of Mr. Thurman's appeal as untimely. *Thurman v. Dep't of Navy*, No. SF-3443-12-0727-I-1 (M.S.P.B. Sept. 16, 2013) ("*Final Board Decision*"). The Board found that "documents in the record, specifically various emails to LCDR Haverly and the [Human Resources Specialist], support the . . . finding that the appellant continued to 'actively engage' agency officials about matters relating to his indefinite suspension in the weeks following April 30, 2012." *Id.* at *5. Those "interactions with agency officials . . . undermine his claim that he was unable to file a timely appeal because of his mental state." *Id.* Therefore, Mr. Thurman "failed to establish that the delay in filing his Board appeal was the result of illness or medical condition." *Id.* at *7.

Mr. Thurman timely appealed the Board's final decision to this court.

---

MSPB remedy, Mr. Thurman sued in the United States District Court for the Western District of Washington. That court dismissed the suit, interpreting it to challenge the June 2012 suspension and finding Mr. Thurman's election of MSPB remedies to be one of two sufficient bases for dismissal. Although the government's motion seemingly did not so state, the district court said that Mr. Thurman had "failed to include a claim of discrimination . . . in the MSPB proceeding." Resp. Supp. App. 35. That statement may have overread a statement by the administrative judge concerning special timing rules for mixed cases. Resp. App. 14. The online docket sheet of the Washington case records no notice of appeal from that decision.

DISCUSSION

The record on appeal raises a question bearing on the exclusion from this court's jurisdiction of "case[s] of discrimination" coming from the Board under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. §§ 7702, 7703(b)(1). *See Kloeckner v. Solis*, 133 S. Ct. 596 (2012). The question is whether one basis for Mr. Thurman's challenge to his June 2012 suspension in his effort to seek relief from the Board is racial discrimination prohibited by the Civil Rights Act of 1964. That question is prompted by Mr. Thurman's allegation, in his September 20, 2012 petition for review to the Board, that the "determination to terminate" him was retaliation for his earlier race-discrimination filing. Resp. App. 30.

The fact that timeliness was the only issue ripe for decision in the Board review of the administrative judge's pre-merits dismissal—as is common with timeliness and other procedural dismissals—hardly means that discrimination was not one of the alleged bases for challenging the adverse action. Nor does the fact that timeliness is the only issue ripe for decision in this court mean that this is not a case of discrimination. Moreover, a case of retaliation can be a case of discrimination outside this court's jurisdiction. *Diggs v. Dep't of Housing & Urban Dev.*, 670 F.3d 1353 (Fed. Cir. 2011). Further, not all grounds for challenging an adverse action need to be stated in the original appeal documents. 5 C.F.R. § 1201.24(b).[2] Per-

---

[2]   5 C.F.R. § 1201.24(b) states: "An appellant may raise a claim or defense not included in the appeal at any time before the end of the conference(s) held to define the issues in the case. An appellant may not raise a new claim or defense after that time, except for good cause shown. However, a claim or defense not included in the appeal may be excluded if a party shows that including it would result in undue prejudice."

haps a claim of discrimination first made in a petition for review to the Board can make a case one of discrimination excluded from our jurisdiction: if such a claim is clearly presented but barred in the Board, the bar might be fairly treated as procedural, not jurisdictional, which might make the case one of discrimination under *Kloeckner*. But we need not and do not decide that question, in general or in the circumstances of this case.

In this court, Mr. Thurman squarely asserts that "[t]he case is not a 'case of discrimination' that is excluded from this court's jurisdiction by 5 U.S.C. 7702 and 7702(b)(2)," that he "did not claim a 1964 civil rights violation in [his] Board appeal," and that he "did not present a claim to the Board that made this a 'case of discrimination.'" *Thurman v. Merit Sys. Prot. Bd.*, No 14-3045 (Fed. Cir. May 21, 2014) (ECF No. 22). We take those statements to be an abandonment, for purposes of his MSPB case No. SF-3443-12-0727-I-1, of any allegation that would make this a case of discrimination. On that basis, we conclude that we have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1).[3]

On the merits, this court must uphold a decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Because we find none of those defects, we affirm the dismissal of Mr. Thurman's appeal.

Under 5 C.F.R. § 1201.22(b)(1), an appeal to the Board "must be filed no later than 30 days after the

---

[3] We grant the government's motion to allow the late filing of its response to this court's order of April 24, 2014.

effective date, if any, of the action being appealed, or 30 days after the date of the appellant's receipt of the agency's decision, whichever is later." Mr. Thurman does not dispute that his appeal was untimely. Because he received the agency's indefinite-suspension decision on June 23, 2012, he had until July 23rd to file an appeal to the Board. He filed his appeal on August 25th, twenty-five days after the deadline.

If, as here, an appeal is untimely, it "will be dismissed . . . unless a good reason for the delay is shown." 5 C.F.R. § 1201.22(c). Mr. Thurman bears the burden of proving that good cause existed for the delay. *See* 5 C.F.R. § 1201.56(a)(2)(ii). "[W]hether the regulatory time limit for an appeal should be waived based upon a showing of good cause is a matter committed to the Board's discretion and this court will not substitute its own judgment for that of the Board." *Mendoza v. Merit Sys. Prot. Bd.*, 966 F.2d 650, 653 (Fed. Cir. 1992) (en banc).

It was not an abuse of discretion for the Board to conclude that Mr. Thurman had not shown good cause for his delay. Mr. Thurman relied on his "mental state" after being arrested on April 30, 2012, stating that he "was unable to cope" with the arrest and, therefore, "tried to block it all out in hope it would just go away." Resp. App. 50. The Board, in considering whether Mr. Thurman's mental health provided good cause, found—and Mr. Thurman does not dispute—that he had a series of interactions with agency officials after receiving the Notification of Proposed Indefinite Suspension on May 16th. The Board specifically relied on his May 21st email to Lt. Cdr. Haverly and on his two May 23rd emails to Mr. Jamrog to find that he "continued to 'actively engage' agency officials about matters relating to his indefinite suspension in the weeks following April 30, 2012." *Final Board Decision*, at *5. While Mr. Thurman's emails to Lt. Cdr. Haverly and Mr. Jamrog were sent before the period he could have and should have appealed his suspension (June 23rd to July

23rd), they do, as the Board found, "undermine his claim that he was unable to file a timely appeal because of his mental state" after his April 30th arrest. *Id.* Accordingly, the Board acted within its discretion in concluding that Mr. Thurman "failed to establish that the delay in filing his Board appeal was the result of an illness or medical condition." *Id.* at *7.

## CONCLUSION

For the foregoing reasons, we affirm the Board's dismissal of Mr. Thurman's claim.

## **AFFIRMED**

No costs.